[S. F. No. 1019.   In Bank.—July 28, 1897.]

FRED A. DAVIS, PETITIONER, v. MYRON A. WHID-
DEN, AS AUDITOR, ETC., RESPONDENT.

COUNTY GOVERNMENT ACT—REPEAL OF CLARK ROAD LAW—AUTHORITY OF
SUPERVISORS TO ORDER ROAD WORK—ALLOWANCE OF CLAIM—MANDA-
MUS TO AUDITOR.—The act of April 1, 1897, to establish a uniform sys-
tem of road government, etc., commonly known as the "Clark Road
Law," by the provisions of which the powers of supervisors over
public roads were withdrawn and vested in road district corporations
therein provided for, being inconsistent with the provisions of the new
County Government Act subsequently approved on the same day,
was thereby repealed; and under the terms of the latter act the county
board of supervisors has authority to order road work to be done, and
to allow claims therefor; and mandamus will lie to compel the auditor
to draw his warrant for such allowed claims.

ID.—PASSAGE OF LAW—GOVERNOR'S APPROVAL—INCONSISTENT ACTS OF SAME
DATE—CHRONOLOGICAL ORDER OF PUBLICATION—PRESUMPTION—JUDI-
CIAL NOTICE—AID FROM SECRETARY OF STATE.—A law is not finally
passed until it is approved by the governor, and transmitted by him to
the secretary of state; and where inconsistent acts are approved on the
same date, it is to be presumed that they were printed and published
in the chronological order of their approval; but the court will take
judicial notice of the time of the approval of each act, and may resort
further to the office of the secretary of state to learn the exact time
thereof.

MANDAMUS from the Supreme Court to the Auditor of
Alameda County.

The facts are stated in the opinion of the court.

Bishop & Wheeler, and S. L. Lieb, amicus curiæ, for
Petitioner.

Charles E. Snook, L. S. Church, and Henning & Bowen,
amicus curiæ, for Respondent.

THE COURT.—This is an application for a writ of man-
date to compel the respondent, as county auditor of the
county of Alameda, to draw his warrants in payment
of certain claims of work done by order of the board of
supervisors of the county on June 1, 1897.   The work
was not done to prevent damage by storm waters or
floods.   The claims were duly presented to and allowed

by the board of supervisors of the county and duly certified according to law, and were thereupon assigned to petitioner, who thereafter demanded of the auditor that he draw his warrants on the county treasurer in payment thereof. This demand the auditor refused, and he justified his refusal on the sole ground that the board of supervisors had no power or authority on June 1, 1897, to authorize or order the road work to be done for which the claims were allowed. To support this position he relies upon an act passed by the last legislature, entitled "An act for the establishment of a uniform system of road government and administration in the counties of the state of California." (Stats. 1897, p. 374.) The act was approved April 1st, and went into effect May 31, 1897, and is commonly known as the "Clark Road Law." It is claimed that by the provisions of the said act the powers and duties that had for many years prior to June 1, 1897, been exercised by the boards of supervisors over the public roads in the several counties of this state, were expressly withdrawn from the supervisors and exclusively vested in and conferred upon the road district corporations provided for in the act and the officers thereof, and that for this reason the board of supervisors had no power or jurisdiction to order the work to be done as alleged in the petition.

A new County Government Act was also passed by the last legislature, which was approved and took effect on the same day as the Clark Road Law. (Stats. 1897, p. 452.) By section 25, subdivision 4, of this act, it is provided that the boards of supervisors in their respective counties shall have jurisdiction and power to "lay out, maintain, control, construct, repair, and manage public roads, turnpikes, . . . . and bridges within the county, unless otherwise provided by law . . . . ; *provided,* that the road commissioners or road overseers, in their respective districts, shall employ all labor required, and direct the conduct of work of any kind upon any and all public roads." And by section 232 of the act it is

provided that "all acts and parts of acts inconsistent with this act are hereby repealed."

It is contended for petitioner that this last-named act was, at the time the road work in question was done, and still is, in force, and the controlling law upon the subject; that the Clark Road Law never has been or could be put in operation, and that it was repealed by the County Government Act, and, besides, was unconstitutional and void for various reasons.

By section 1 of the Clark Road Law every road district is, in effect, declared to be a public corporation, and it is made the duty of the boards of supervisors in the several counties in which road districts do not now exist "to subdivide such counties into road districts as by law now provided"; and by sections 2, 3, 4, 5, 6, 7, and 8, authority is given the boards of supervisors to change the boundaries of old districts, to form new districts, and to consolidate two or more existing districts into one district.

Section 9 provides: "An election for road trustees shall be held in each road district on the last Saturday of May of each year, at a place in each district to be designated by its board of trustees: 1. The number of road trustees for each district shall be three; . . . . 2. In new road districts the road trustees shall be elected on the last Saturday in May subsequent to the formation of the district; . . . . 3. When a vacancy occurs from any of the causes specified in section 996 of the Political Code of this state, the board of supervisors shall appoint a suitable person to fill such vacancy until the first day of July next succeeding such appointment."

Section 16 provides: "Except when otherwise authorized by law, every road district shall be under the control of a board of road trustees consisting of three members, who shall be residents of the district."

Section 18 provides: "Vacancies in the office of road trustees are caused as follows: 1. By the happening of any of the events specified in section 996 of the Politi-

cal Code; 2. By failure to elect, as provided in section 9 of this act; 3 By the resignation of a trustee."

Section 19 provides: "Vacancies in the office of trustee in a new district shall be filled as are other vacancies. No person shall be appointed to fill any vacancy except upon petition signed by at least ten electors of the district; *provided*, that a vacancy may be filled in any case upon petition signed by a majority of the electors of the district."

Section 23 provides; among other things, "that all powers and duties by this act conferred upon road districts and their officers, which are by any law enacted prior to and existing at the time of the taking effect of this act, conferred upon road overseers, or road commissioners, or boards of supervisors, or other officers, shall be deemed withdrawn by this act from the officers last above named and conferred exclusively upon road districts and their officers."

Other sections prescribe very fully the powers and duties of road districts and their trustees as to laying out, construction, repair, and management of roads in the districts, and as to the levying, collection, and expenditure of moneys raised for road purposes.

That there is an irreconcilable conflict between the two acts in question is apparent, since by them the same powers are vested in entirely distinct and separate bodies. The question then is, which act must prevail?

In view of the conclusion reached it is unnecessary to determine how the road law could be put in operation, that is, how the vacancies in the office of trustee in all the districts in the state could be filled. The act took effect on the sixtieth day after its passage, May 31st, and it provided for an election of trustees on the last Saturday of May, which this year was May 29th. There could therefore be no election this year, and the offices of trustees were left vacant. How could those vacancies be filled? Counsel radically disagree as to whether, under the peculiar provisions of the act, they could be filled by the boards of supervisors, or must be filled, if at all, by the governor of the state.

So it is unnecessary to consider the several objections raised to the road law upon the ground that it is unconstitutional.

"It is an old and well-settled rule that when two laws upon the same subject, passed at different times, are inconsistent with each other, the one last passed must prevail." (*People* v. *Dobbins*, 73 Cal. 257.) A law is not finally passed until it is approved by the governor and transmitted by him to the secretary of state. And, when public justice requires it, the exact time at which an act was approved may be ascertained.

In *People* v. *Clark*, 1 Cal. 406, the facts were that Clark was elected county judge at an election regularly appointed and held. On that day the legislature passed an act repealing the one by virtue of which the election was held, and conferring upon the governor the power of appointment. The repealing act was approved the same day, but at what hour of the day did not appear. Some days thereafter the relator was, by the governor, appointed county judge. The court sustained the validity of the election and said: "The time of the approval of the executive is a fact which can be ascertained and proved, and in all cases, where the rights of parties are in any manner to be affected by the time of the approval, an investigation of the question, when did the event—the passage of the act—occur, should be had."

In *Louisville* v. *Savings Bank*, 104 U. S. 469, the case of *People* v. *Clark, supra,* was cited approvingly, and the court, by Mr. Justice Harlan, said: "In view of the authorities it cannot be doubted that the court may, when substantial justice requires it, ascertain the precise hour when a statute took effect by the approval of the executive. . . . . In determining when a statute took effect no account is taken of the time it received the sanction of the two branches of the legislative department, which sanction is as essential to the validity of the statute as the approval of the executive. We look to the final act of approval by the executive to find when the statute took effect, and, when necessary, in-

quire as to the hour of the day when that approval was, in fact, given."

As we have seen, the two acts in question were approved on the same day, April 1, 1897. How, then, shall we ascertain the chronological order in which they were approved ?

Since the publication of the first volume of our statutes, it has been the uniform custom to print and publish all laws, approved on different days, in the order of their approval, and it is only a fair presumption that all laws, approved on the same day, are printed and published in the same chronological order. And under the provisions of section 528 of the Political Code this order of printing and publication would seem to be required.

It appears from the statutes of 1897 that the Clark Road Law commences on page 374, and is headed chapter 244, while the County Government Act commences on page 452, and is headed chapter 277. From this order we infer that the last-named act was last approved.

To remove the possibility of doubt upon the matter it may be added that courts take judicial notice of the following facts: of whatever is established by law, and of the public and private official acts of the legislative, executive, and judicial departments of the state. In all such cases the court may resort for its aid to appropriate books and documents of reference. (Code Civ. Proc., sec. 1875, subds. 2, 3.) Resorting for aid to the office of the secretary of state, we learn that the County Government Act was in fact last approved by the governor, and was filed in the office of the secretary of state some hours after the filing of the Clark Road Law.

Under these circumstances the County Government Act must be held to be the later act, and must prevail.

Let a peremptory writ of mandate be issued as prayed for.

BEATTY, C. J., did not participate in the foregoing opinion.