[Crim. No. 4337. In Bank.—April 23, 1941.]

THE PEOPLE, Respondent, v. ELDON RICHARD HAWK, Appellant.

Neal Chalmers and A. R. Dunn for Appellant.

Earl Warren, Attorney-General, and J. Q. Brown, Deputy Attorney-General, for Respondent.

THE COURT.—In an information filed by the district attorney of Yolo County, the defendant Hawk and one Winfield Barnes were jointly charged with the murder of Lee Arris, an elderly man. Each defendant entered a plea of guilty, whereupon the court below received evidence to assist in the determination of the degree of the homicide. Following an extended hearing, at which both defendants were represented by counsel, the court decided that the offense was murder of the first degree and sentenced the defendant Hawk to death and the defendant Barnes to life imprisonment. Defendant Hawk alone appeals.

At the hearing considerable evidence was adduced as to the circumstances surrounding the commission of the crime.

The 245-page transcript of the evidence has been examined. It affords ample support for the judgment and sentence imposed upon appellant. Briefly, it appears therefrom that appellant, who is twenty-six years of age, learned from a friend that the deceased, who lived in a cabin at Knights Landing with a young boy, appeared to have plenty of money about his person or cabin, much of which apparently was being expended for liquor. There was some discussion as to the possibility of ''rolling'' the deceased or otherwise relieving him of his money. Nothing came of this particular discussion. On the night of the homicide appellant attended a theater in Woodland with three other young men. During the course of the evening appellant mentioned ''an old man had some money over there'' that he was going to take. Additional discussion of the subject followed, during which appellant referred to a taped hammer handle which he possessed and obviously intended using in the event it should be needed to accomplish the announced objective. It further appears that appellant and his accomplice, Barnes, whom he had met for the first time that evening, later left the automobile in which the quartet was returning from the theater and went to the deceased's cabin. Appellant admitted taking the taped hammer handle with him in the event it should be needed to ''knock [deceased] loose with it''. The other two men returned to town, parking the car where directed by appellant. Appellant entered the deceased's cabin while Barnes remained close by as a ''lookout''. The visit to the cabin was timed to coincide with the temporary absence of deceased's youthful companion. Appellant admittedly expected to find the aged victim either asleep or in a drunken stupor, thus making the commission of the robbery comparatively simple. Instead, as appellant entered he came upon the deceased who was moving about the cabin. Some discussion as to money was had in which appellant admittedly said ''hand it over''. The request was not complied with and a fight ensued in which appellant struck deceased on the head several times with the taped hammer handle. In the scuffle the old man's wallet was taken by appellant or his accomplice, each charging that the other took it. The taking is the only material fact. Both men fled the scene, thereafter burying portions of their clothes or weighting them down with a sandbag and throwing them in

a river. Shortly after the assault deceased's companion returned and found him "in a mess of blood". Assistance was procured and the victim was rushed to a hospital where an emergency operation was performed. He died, however, the following morning. Medical testimony disclosed that deceased had twelve or fifteen lacerations on the top of his head and a fractured skull, the brain itself being cut and torn.

Section 189 of the Penal Code provides that "All murder . . . which is committed in the perpetration or attempt to perpetrate . . . robbery [or] burglary . . . is murder of the first degree. . . . " (See *People* v. *Reid*, 193 Cal. 491, 496 [225 Pac. 859].) Under the evidence the court properly found that the crime was murder of the first degree. It was exclusively within the province of the court to determine whether the death penalty or life imprisonment should be imposed. Undoubtedly the court was influenced to impose the death penalty in defendant's case by the fact that he was not only the instigator of the visit to deceased's cabin but actually struck the fatal blows.

The judgment is affirmed.