[Crim. No. 2941.   First Dist., Div. One.   Feb. 23, 1954.]

In re WILLIAM McMANUS, on Habeas Corpus.

E. John Kleines, under appointment by the District Court of Appeal, for Petitioner.

Edmund G. Brown, Attorney General, and Clarence A. Linn, Assistant Attorney General, for Respondent.

WOOD (Fred B.), J.—Petitioner, having prepared and filed this petition for habeas corpus and being without funds, requested the court to appoint counsel to represent him in the presentation of his case.   Counsel was appointed and has discharged his duties toward his client with commendable zeal and efficiency, thoroughly developing every facet of the case.

May 6, 1936, petitioner McManus was sentenced to state prison for life, upon his plea of guilty of first degree murder.

August 9, 1946, for escape from the state prison in violation of section 4530 of the Penal Code, he was sentenced to state prison "for the term prescribed by law," the "sentence to commence at the time said defendant would otherwise have been discharged." This was in exact compliance with the literal requirement of section 4530 that the term of imprisonment for an escape "commence from the time he would otherwise have been discharged from said prison." It runs contrary to section 669 of the Penal Code which deals with the sentencing of any person who is convicted of two or more crimes and contains a proviso which declares that "if the punishment for any of said crimes is expressly prescribed to be for life imprisonment,[1] whether with or without possibility of parole, then the terms of imprisonment on the other convictions, whether prior or subsequent, shall be merged and run concurrently with such life term."

. Is it reasonably possible to reconcile the provisions of section 4530 and section 669?

Prior to 1943, section 4530 applied to the escape of a prisoner confined in a state prison "for a term less than for life." That, it would appear, excluded punishment of a prisoner who escaped while undergoing punishment (1) for a crime the punishment for which is expressly prescribed to be life imprisonment, or (2) for a crime the maximum punishment for which is life imprisonment if, in the latter case, the escape occurs before the term is fixed by the appropriate

---

[1]The punishment for petitioner's first offense (murder in the first degree) was expressly prescribed to be for life imprisonment: "death, or confinement in the state prison for life, at the discretion of the jury . . . ; or upon the plea of guilty [as in this case], the court shall determine the same. . . ." (Pen. Code, § 190.) In such a case it is exclusively within the province of the trial court to determine whether the death penalty or life imprisonment should be imposed. (*People* v. *Hawk*, 17 Cal.2d 812, 814 [112 P.2d 225]; *People* v. *Phyle*, 28 Cal.2d 671, 674 [171 P.2d 428].) When, as in our case, the only term of imprisonment that can be imposed is imprisonment for life, the indeterminate sentence law is inapplicable. (*People* v. *Vaile*, 2 Cal.2d 441, 445 [42 P.2d 321], and cases cited.) There is no determination of sentence to be made by the Adult Authority.

It is unlike the punishment for second degree murder, "five years to life" (Pen. Code, § 190), which is not "expressly prescribed to be life imprisonment." (Pen. Code, § 669; *People* v. *Collins*, 99 Cal.App.2d 780, 781 [222 P.2d 686], citing *People* v. *Rivas*, 85 Cal.App.2d 540 [193 P.2d 151].) When the term of imprisonment for second degree murder is pronounced it is "indeterminate" and so remains "until fixed by the board which by law has the power to determine the duration of sentences." (P. 782 of 99 Cal.App.2d.)

administrative board or thereafter if the term is fixed at the maximum.[2] The 1943 deletion of the words "for a term less than for life" *literally* imposes the penalties of section 4530 upon both types of life-timers and requires the term of imprisonment for the escape to "commence from the time he would otherwise have been discharged from said prison."

If section 4530 had been thus amended before section 669 was amended to require all terms to run concurrently if one of them is "expressly prescribed to be for life imprisonment," reconciliation of the two sections would not be difficult. In that case it would be a fair inference that the Legislature intended section 669 to prevail, to the extent of the conflict, it being the latest legislative expression on the subject.

But that is not the fact. Of the two, section 669 was the first amended in a manner to create this conflict. From 1872 until 1927 it dealt with the sentencing of a person who was "convicted" of two or more crimes before pronouncement of sentence for any of them. In such a case, it declared, "the imprisonment to which he is sentenced upon the second or other subsequent conviction must commence at the termination of the first term of imprisonment . . . or of the second or other subsequent term of imprisonment . . ." In 1927 section 669 was amended to enlarge its scope by removing the limitation that it apply only to convictions incurred prior to sentencing and by giving the trial court discretion to make the terms concurrent in "exceptional cases." (Stats. 1927, ch. 626, p. 1056.) In 1931 it was amended by removing the mandate and giving the trial court discretion to make the subsequent terms run concurrently or consecutively. (Stats. 1931, ch. 481, p. 1050 at 1052.) In 1935 the section was recast to read much as it does today, without the proviso under discussion. (Stats. 1935, ch. 576, p. 1670.) In 1941 the proviso was inserted, declaring that "if the punishment for any of said crimes [whether conviction occurred in the same proceeding or court or in different proceedings or courts and whether judgment was rendered by the same or by dif-

---

[2]For example, a person committed to the state prison for first degree robbery (not less than five years; Pen. Code, § 213) is subject to imprisonment for life. Accordingly, until the administrative board fixes the term at less than life such a person is "undergoing a life sentence" as the latter expression is used in § 4500 (former § 246) of the Penal Code. (*People* v. *McNabb*, 3 Cal.2d 441, 444, and 456 [45 P.2d 334].)

The term fixed by the Adult Authority "shall not exceed the maximum or be less than the minimum term of imprisonment provided by law. . . ." (Pen. Code, § 3023.)

ferent judges] is expressly prescribed to be life imprisonment, then the terms of imprisonment on the other convictions, whether prior or subsequent, shall be merged and run concurrently with such life term." (Stats. 1941, ch. 742, p. 2262.) This section was amended in 1943 by insertion of the clarifying words "whether with or without possibility of parole" after the words "expressly prescribed to be life imprisonment." (Stats. 1943, ch. 219, p. 1122.)[3]

It was in 1943, as we have noted, that section 4530 was amended to apply to the life-timer and to require that the term of imprisonment for an escape by him "commence from the time he would otherwise have been discharged from said prison," in direct conflict with the concurrent term requirement of the 1941 proviso of section 669. Petitioner's counsel directs attention to the 1943 amendment of that proviso and earnestly and with much persuasiveness contends that such amendment evinces a clear legislative intent that the concurrent term requirement of section 669 continue to prevail. However, there are several factors to consider before we can say that such is the expressed legislative intent.

Counsel speaks of these 1943 amendments as having been made "at the same time, i.e. 1943." Although made in the same year they were not made at the "same time." The amendment of section 4530 was later in time than the amendment that year of section 669; illustrated by the chapter numbers. The section 4530 amendment was effected by chapter 635; the section 669 amendment, by chapter 219. The holding in *Davis* v. *Whidden,* 117 Cal. 618 [49 P. 766], indicates that in such a case the amendment which was later in time (chapter 635, amending section 4530) should and does prevail. The court in the Davis case applied the rule that " '. . . when two laws upon the same subject, passed at different times, are inconsistent with each other, the one last passed must prevail,' " and the principle that "a law is not finally passed until it is approved by the governor and transmitted by him to the secretary of state. And, when

---

[3]Counsel have not considered and we do not decide the question whether the 1943 amendment of section 669 made such a change as to effect a repeal and reenactment (a new enactment) of the entire proviso in 1943. (See Gov. Code, § 9605.)

Nor have we considered whether section 4530 may be a special provision and the proviso of section 669 a general provision, giving section 4530 precedence regardless of the sequence of enactment or amendment of either of them. (See *Peairs* v. *Chambers,* 28 Cal.App. 584 [153 P. 410].)

public justice requires it, the exact time at which an act was approved may be ascertained.'' (P. 622.) In applying that rule and that principle, the court said: ''Since the publication of the first volume of our statutes, it has been the uniform custom to print and publish all laws, approved on different days, in the order of their approval, and it is only a fair presumption that all laws, approved on the same day, are printed and published in the same chronological order. And under the provisions of section 528 of the Political Code [see Gov. Code, §§ 9500-9516, 9700-9704, and 9760-9768] this order of printing and publication would seem to be required.

''It appears from the statutes of 1897 that the Clark Road Law commences on page 374, and is headed chapter 244, while the County Government Act commences on page 452, and is headed chapter 277. From this order we infer that the last-named act was last approved. . . . Resorting for aid to the office of the secretary of state, we learn that the County Government Act was in fact last approved by the governor, and was filed in the office of the secretary of state some hours after the filing of the Clark Road Law.''[4] (P. 623.) Accordingly, the court held that the County Government Act was the later act and therefore prevailed.

The highest chapter number test[5] seems quite logical. The Governor participates importantly and significantly in the legislative process when considering and acting upon legislative bills after their passage through the two houses, approving them and filing them with the Secretary of State or vetoing them and returning them to the house of origin. (See Const., art. IV, §§ 16 and 34; *Lukens* v. *Nye,* 156 Cal. 498, 501 [105 P. 593, 20 Ann.Cas. 158, 36 L.R.A.N.S. 244].)

The Senate, the Assembly and the Governor, it may be assumed, are aware of the highest chapter number test (the bill last filed with the Secretary of State) as enunciated in

---

[4] In our own case, also, the record shows that the 1943 amendments of sections 669 and 4530 were approved by the Governor and filed with the Secretary of State in the time sequence indicated by their chapter numbers. Chapter 219, amending section 669, was approved by the Governor and filed with the Secretary of State on April 24; chapter 635, amending section 4530, on May 20, 1943. (See Stats. 1943, pp. 1122 and 2255; also Final Calendar of Legislative Business, 55th Sess., 1943, Senate Bill 678 [ch. 219], and Assembly Bill 479 [ch. 635].)

[5] The chapter numbers normally reflect the relative dates of approval by the Governor or of final action in the Senate and Assembly if a measure is vetoed by the Governor and then passed over his veto. If there be a doubt, the original, permanent records in the office of the Secretary of State may be consulted.

*Davis* v. *Whidden, supra,* 117 Cal. 618, and have consistently over the years acted in view of it and in reliance upon it. This is reflected in an opinion of the legislative counsel to the Governor, under date of February 27, 1948, discussing the applicability in California of the rule enunciated in Illinois (*People ex rel. Schlaeger* v. *Mattes,* 396 Ill. 348 [71 N.E.2d 690]) that, of two conflicting legislative bills passed by the Legislature on the same day, the bill last passed by the Legislature prevails regardless of the order in which signed by the Governor. That opinion concludes with these words: "We believe that *Davis* v. *Whidden,* 117 Cal. 618 [49 P. 766], represents the law on the subject in this state. In that case the Supreme Court of California pointed out that a law is not finally passed until it is approved by the Governor and transmitted by him to the Secretary of State, and went on to hold that, of two conflicting bills approved on the same day, the one last signed by the Governor would prevail. *Davis* v. *Whidden* was decided in 1897 and has never been disapproved or overruled by our Supreme Court. On the contrary, implied approval of the reasoning of that case is found in *Ex Parte Sohncke,* 148 Cal. 262 [82 P. 956, 113 Am.St.Rep. 236, 7 Ann.Cas. 475, 2 L.R.A. N.S. 813]. The rule of *Davis* v. *Whidden* has been accepted by the legislature and the California courts for more than fifty years and we do not believe that a decision of the Supreme Court of one other state would influence our court to change its opinion."

General recognition of the principles enunciated in *Davis* v. *Whidden, supra,* is reflected, also, by the practice of the compilers and publishers of our laws (when a section is more than once amended at a session) of treating the amendment bearing the highest chapter number as the latest, printing its text with a footnote citing the lower chapter number and referring to the latter as an earlier amendment. (See, for example, 2 Deering's Gen. Laws, 1949 Pock. Supp. 43-44, § 7 of Act 3796, amended by chapters 1348 and 1418, Stats. 1949.)

Counsel for petitioner advances the additional point that even if the amendment of section 4530 were later than the last amendment of section 669, it could not constitutionally affect the latter because that would be an amendment by "implication." He invokes sections 15, 16 and 24 of article IV of the state Constitution and concludes that no statute, or section of a statute, can be amended by "implication"; i.e., that the statute revised or the section amended must be "re-enacted

and published at length as revised or amended." (Art. IV, § 24.) An early case gave support to that view but it was later held that the amendment of a statute by "implication" is "not within the evils aimed at by the inhibition [of § 24 of art. IV], and to apply it to statutes which amend others by implication would almost prohibit legislation." (*Hellman* v. *Shoulters,* 114 Cal. 136, 152 [44 P. 915, 45 P. 1057].)

▉ The conclusion seems inescapable that the provisions of section 4530, as amended in 1943, prevail over the 1941-1943 proviso of section 669.

Petitioner urges that such a conclusion results in an incongruous situation, not reasonably inferable as intended by the Legislature. Whether specifically intended or not, it seems unavoidable. Indeed, it is no more incongruous to prescribe the commencement of a term of imprisonment for an escape at the end of a life term expressly prescribed by law than it is to commence it at the end of an indeterminate life sentence if in fact the Adult Authority fixes the particular prisoner's term at life. The proviso of section 669 would not operate in the latter case, would not require the terms to run concurrently.

Nor does our interpretation result in any greater degree of incongruity than clearly obtained under section 669 as it read from 1872 until 1927. If the earlier of the two convictions to which the section then applied required a life term the section by its very terms required the sentence for the second conviction to commence at the end of the life term.

Nor is it any more incongruous than the rule applied by the statute which preceded section 4530 (§ 1 of Act of April 30, 1855, Stats. 1855, chap. 160, p. 203). That statute, which continued operative until the adoption of the Penal Code (see § 105 thereof as enacted in 1872), declared that whenever "any prisoner legally committed to the state prison . . . shall escape therefrom . . . such person . . . if found guilty of such escape . . . prior to pardon, discharg (discharge) or expiration of his term of service . . . shall be punished by a recommitment for the same length of time for which he was sentenced when he escaped from said prison; said second term of imprisonment to commence at the expiration of the term for which he was last sentenced." In other words, if during that period a life-timer escaped, he would be subject to another life term upon the expiration of his first life term, or upon the earlier ending thereof by pardon or by commutation of sentence.

Indeed, the 1855 statute suggests that section 4530 in its application to life-timers is considerably less incongruous than at first might appear. Suppose, for example, the Governor should commute a prisoner's life term to time served, or pardon him of the first offense; or, suppose that after the conviction for an escape the judgment of imprisonment for life is reversed upon appeal or is annulled in a proceeding in habeas corpus or *coram nobis.* Any such termination of the life sentence would operate as a "discharge" and mark the commencement of the prisoner's term for any escape he may have committed.[6]

Thus, it appears that there is no great incongruity in imposing a postponed term of imprisonment upon a life-timer who escapes. There are contingencies in which the life term might be shortened. Also, there is no reason why an escape by a life-timer should not be regarded as serious as an escape by any other felon, to be treated on the same basis and punished in the same fashion. In addition, prosecution of such an offense to judgment makes a record of one aspect of the prisoner's conduct, authentic information which is readily available to the Adult Authority when determining if the prisoner merits the privilege of parole.

We conclude, therefore, that no error was committed when in 1946 the superior court ordered that the sentence for the escape commence at the time when the petitioner herein "would otherwise have been discharged."

Petitioner has evinced considerable concern over his status as affected by the sentence for the escape, particularly in regard to his eligibility for parole. Such consequences, whatever they may be, are not strictly material to the present inquiry in view of our conclusion that the sentence for the escape was correct, but it seems desirable, under the circumstances of this case, to discuss them.

First, the legal consequences do not appear at all serious.

The "matter of parole may be determined by the board [Adult Authority] at any time after the expiration of six months from and after the actual commencement of such imprisonment; provided, however, that where the maximum sentence is five years or less, such determination may be made by the Adult Authority after a period of 90 days." (Pen. Code, § 3041.) "No prisoner who has had imposed upon him

---

[6]Release upon parole would, of course, not be such a "discharge." (See Pen. Code, § 3056; 9 Cal.Jur. 10-Yr.Supp. (1949 Rev.) 45, Parole of Prisoners, § 11.)

two or more consecutive sentences may be paroled until he has served at least two calendar years of the aggregate of such consecutive sentences.'' (Pen. Code, § 3043.) The concept that consecutive sentences comprise a single, continuous term for the purpose, among others, of allowing and forfeiting good-time credit (*In re Cowen,* 27 Cal.2d 637, 644 [166 P.2d 279]; cited in *In re Pedrini,* 33 Cal.2d 876, 880 [206 P.2d 699]) seems clearly applicable to the provisions of section 3043. "No prisoner confined in the State prison and no prisoner under sentence to the State prison who is convicted of an escape or an attempt to escape from the prison or the guards may be paroled until he has served at least two calendar years from and after the date of his return to the prison after such conviction.'' (Pen. Code, § 3044.)

In view of the fact that more than seven years have elapsed since petitioner's conviction of the escape and his return to the state prison, there is no *legal* barrier to his parole should the Adult Authority determine that he merits the privilege of parole. ■ It is a privilege, not a right.

Second, in response to petitioner's evinced belief that the Adult Authority has thus far failed to grant him parole under the misapprehension upon its part that he is ineligible to parole until after the expiration of his life term, the respondent made an offer of proof. The parties stipulated, during the oral argument, that if the members of the Adult Authority were called to testify herein they would testify to the effect that the facts stated in the offer are true.

The stipulated testimony, in the terms of the offer of proof, is that "the Adult Authority has on several occasions considered the case of William McManus for parole consideration''; that "the Adult Authority is of the opinion that it has the authority to release William McManus on parole''; and that "the Adult Authority does not presently believe that William McManus is a person who should be released on parole.''

Accordingly there appears to be no basis for petitioner's anxiety concerning the Adult Authority's correct understanding of its powers, duties and jurisdiction in the consideration and determination of the question whether and when he merits the privilege of parole.

The writ heretofore issued must be discharged. There is no occasion to remand the petitioner to custody for he has continued in the custody of the respondent warden pursuant to the provisions of the writ. In view of our conclusion that

there was no error in the second judgment as rendered and pronounced, we have no occasion to consider, nor do we undertake to say, what if any remedy might have been accorded petitioner in this proceeding if we had found that judgment erroneous in respect to the commencement of the term of imprisonment imposed.

The petition is denied and the writ heretofore issued herein is discharged.

Peters, P. J., and Bray, J., concurred.