[Crim. No. 256.　Third Appellate District.—September 4, 1914.]

# THE PEOPLE, Respondent, v. WILLIE DEEN WEST et al., Appellants.

CRIMINAL LAW—HOMICIDE COMMITTED BY INMATE OF INSANE ASYLUM —SUBMISSION OF QUESTION OF INSANITY TO JURY.—Where inmates of an insane asylum, who have not been cured or discharged, commit a homicide in attempting to escape, the court must, on motion made before their trial for murder, submit the question of their present insanity to a jury as provided by section 1368 of the Penal Code.

ID.—INSANITY—COMPETENCY OF ACCUSED TO MAKE DEFENSE.—The question thus presented to the court is different from that involved in the consideration of whether the defendants are responsible for the alleged homicide. As to their responsibility for the crime charged, the inquiry must be whether they knew the difference between right and wrong and could distinguish the quality and consequence of their act, but here the question is whether they are mentally competent to make a rational defense.

ID.—INSANITY OF ACCUSED—DISCRETION OF COURT IN SUBMITTING QUESTION TO JURY.—There is no discretion left in the court, in the matter of submitting the question of the sanity of a defendant to a jury, when a doubt arises as to his sanity; and ordinarily if there are statements under oath of a credible person or persons that he is insane, such doubt is or should be raised and the question must be submitted to a jury. The only contingency is, Does doubt arise?

ID.—JURY TO TRY INSANITY—WHEN MUST BE IMPANELED.—If information comes, from a proper source and through proper channels, that the defendant is insane, or if, through observation and personal inspection, the information is disclosed to the court, a jury must be impaneled to pass upon his mental condition.

ID.—RESPONSIBILITY FOR CRIME—ABILITY TO MAKE DEFENSE.—A person may be sane enough to be responsible for a crime and yet incapable of making his defense, and, on the other hand, he may have mental capacity to be placed on trial and yet be insane within the contemplation of the law as to responsibility for a criminal act.

APPEAL from a judgment of the Superior Court of Mendocino County and from an order refusing a new trial. J. Q. White, Judge.

The facts are stated in the opinion of the court.

Theodore Hale, for Appellants.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

25 Cal. App.—24

THE COURT.—A rehearing in these cases was granted by this court and, upon further consideration, we have concluded that the judgment should be reversed and a new trial granted.

The defendants were convicted in the superior court of the crime of murder in the second degree and sentenced to the penitentiary for life. At the time of the homicide, November 28, 1913, they were inmates and patients at the Mendocino state hospital for the insane and deceased, at the time of his death, was also an inmate and. patient of said institution. Before the trial the defendants regularly moved the court that the question of their present sanity be submitted to a jury as provided by section 1368 of the Penal Code. The court denied the motion and in this we think prejudicial error was committed.

In support of said motion the defendants introduced and read the affidavit of one of their counsel, Mr. Hale McCowen, Jr. From this affidavit it appeared that, at the time of the homicide, the defendants were confined in the hospital as insane persons and were being treated as such and that neither had been discharged as cured or at all; that the defendant Peoples had been sent to the hospital upon the certificates of two surgeons of the United States navy at Puget Sound, Washington, dated October 24, 1913. West was committed from the penitentiary at San Quentin upon the certification of the warden, the resident physician and surgeon, and the captain of the yard, that West was insane. The commitment was dated November 10, 1913. It is thus to be noticed how closely their commitment was followed by the homicide, and, it may be stated, the trial occurred soon thereafter.

Mr. McCowen further set out in his affidavit that both he and his associate "have each made efforts to secure from the said defendants some statement concerning the crime charged in the information; that said defendants refuse to say anything about the facts or circumstances of the offense and act as though suffering from delusions of some character. That affiant therefore alleges that it is his opinion that both of these defendants are mentally insane; and that neither of them is mentally competent to make a just and rational defense to the charge made against them."

It must be admitted that there was thus presented a very strong showing of present insanity. It is asserted by appellants' counsel that the facts "constitute the strongest showing

of present insanity which has ever been brought to the attention of a court in any case which has been appealed. We have examined the cases found in the reports, yet have found no case where an alleged crime was committed by insane men, who were being confined in a public hospital for the insane and had never been cured, nor ordered discharged and who continued in such a state of mental derangement that attorneys appointed by the court to defend them could obtain no assistance from the defendants in the conduct of their case." We have not examined all the cases to verify the said assertion but we are satisfied that upon the showing made the trial judge should have arrested the proceedings to have the sanity of the defendants determined by a jury.

Upon mature consideration we do not think the counter showing made by respondent was sufficient to justify the court in its denial of the motion.

It may be added that the conduct and statements of the defendants during the progress of the trial furnish additional evidence that they were incapable of making their defense, but we forbear any recital in detail of these circumstances.

We do not mean, of course, to decide that the defendants were insane at the time of the homicide or that at the time of the trial they were incapable of making their defense, but our decision goes only to the extent that the court should have submitted the last question to a jury prior to any trial for the offense charged.

The principle involved has been stated no more aptly, probably, than in the familiar quotation from Blackstone: "Also, if a man in his sound memory commits a capital offense, and before arraignment for it he becomes mad, he ought not to be arraigned for it; because he is not able to plead to it with that advice and caution that he ought. And if, after he had pleaded, the prisoner becomes mad, he shall not be tried—for how can he make his defense? If after he be tried and found guilty, he loses his senses before judgment, judgment shall not be pronounced and if after judgment he becomes of nonsane memory execution shall be stayed, for, peradventure, says the humanity of English law, had the prisoner been of sound memory he might have alleged something in stay of judgment and execution."

It cannot be too strongly emphasized that the question presented to the court was different from that involved in the

consideration whether the defendants were responsible for the alleged homicide. As to their responsibility for the crime charged the inquiry must be whether they knew the difference between right and wrong and could distinguish the quality and consequence of their act, but here the question was whether they were mentally competent to make a rational defense.

*In re Buchanan,* 129 Cal. 330, [50 L. R. A. 378, 61 Pac. 1120], the supreme court held that there is a difference between the medical view of insanity and the view upon which the statute is founded and that the question must be determined with reference to the latter, and, after making the foregoing quotation from Blackstone, the opinion by Chief Justice Beatty proceeds: ''This short quotation shows what all the books and treatises and decisions on the subject show, that the true and only reason why an insane person should not be tried is 'that he is disabled by the act of God to make a just defense, if he have one.' ''

We need not attempt a more accurate discrimination between the insanity that excuses crime and the insanity that arrests the trial although the distinction has been the subject of learned discussion in some of the decisions. Of course, a person may be sane enough to be responsible for crime and yet incapable of making his defense, and, on the other hand, he may have mental capacity to be placed on trial and yet be insane within the contemplation of the law as to responsibility for a criminal act.

And finally, as to the showing required to make it the duty of the court to submit the question of sanity to a jury, there is no discretion left in the court when a doubt arises as to the sanity of the defendant. And ordinarily, at least, if there are statements under oath of a credible person or persons that the defendant is insane, a doubt is or should be raised as to the defendant's sanity and the question must be submitted to a jury. The only contingency is, Does a doubt arise? If information comes, through a proper source and through proper channels, that the defendant is insane, or if, through observation and personal inspection, the information is disclosed to the court, a jury must be impaneled to pass upon the mental condition of the accused. (*Marshall* v. *Territory,* 2 Okl. Cr. 136, [101 Pac. 139]; *People* v. *Ah Ying,*

42 Cal. 18; *Freeman* v. *People,* 4 Denio (N. Y.), 9, [47 Am. Dec. 216].)

We do not mean to say that the weight of the evidence and the credibility of the witnesses are not within the peculiar province of the trial judge, but we think that the circumstances here were such that it should be held as a matter of law that a doubt was or should have been created and that it was the court's duty to submit the question as provided in section 1368 of the Penal Code.

We deem it unnecessary to notice specifically the cases cited by counsel or to discuss other points made by appellants as they will probably not arise again.

The judgment and order are reversed.