[Crim. No. 4663.   Second Dist., Div. Three.   Nov. 21, 1951.]

THE PEOPLE, Respondent, v. WILLIAM F. DARLING, Appellant.

William Herbert Hall for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

WOOD (Parker), J.—Defendant was charged with the crime of incest in two counts. He pleaded not guilty and also not guilty by reason of insanity. Trial by jury was waived. He was adjudged guilty on both counts. Evidence was then received on the issue of insanity, and the court found that defendant was sane at the time of the commission of the offenses and at the time of trial. Defendant appeals from the judgment, sentence, and order denying his motion for a new trial.

Appellant contends that the court erred in not submitting the issue of appellant's insanity "to a special trial" as directed by section 1368 of the Penal Code. He argues, in substance, that there was substantial evidence to create a doubt as to defendant's sanity at the time of trial and therefore the court was required to suspend the criminal proceedings and to order the question as to defendant's present sanity be determined in the manner provided in said section 1368.

At the time defendant entered his plea of not guilty the court appointed a physician, pursuant to section 1871 of the Code of Civil Procedure, to examine the defendant and report his findings to the court. Said section provides in part that whenever it shall be made to appear to the court, either before or during trial, that expert evidence will be required the court may appoint one or more experts "to investigate and testify" relative to the matter as to which such expert evidence will be required. About three weeks after entering the plea of not guilty, defendant entered the additional plea that he was not guilty because he was insane at the time he was alleged to have committed the

offenses. The court thereupon appointed a physician from the medical staff of a state hospital, pursuant to section 1027 of the Penal Code, to examine the defendant as to his sanity and to make a report regarding his mental condition to the court. At the trial the complaining witnesses, who were daughters of the defendant, were called as witnesses by the People and testified, in substance, that the defendant had acts of sexual intercourse with them on or about the dates charged in the information. The defendant did not testify. By stipulation, the testimony of the defendant given at the preliminary hearing was read into the record on behalf of the People. That testimony was, in substance, that defendant wished to waive the preliminary hearing and to plead guilty; that he had talked the matter over with his attorney who advised him as to his constitutional rights; he (defendant) was acting freely and voluntarily; and that he had had acts of sexual intercourse with the daughters at the times alleged in the information. Then the court adjudged defendant guilty as charged in both counts. The court then said, ''Now, we come to the defense interposed of not guilty by reason of insanity.'' It was stipulated that the medical reports of the two physicians, who had been appointed by the court, might be considered by the court ''with the same force and effect'' as if the physicians had appeared in court and testified.

The judge thereupon said that he had read the conclusions in one of the medical reports and that the conclusions of that physician were that the defendant was insane at the time of the commission of the crimes and also at the time of the examination by the physician. The court then read from said report as follows: ''The defendant has a serious defect of judgment. His offense is suggestive of sexual psychopathy but is not so much a psychological deviation as a moral deviation which signifies mental deterioration. He should have a spinal fluid examination because there is a possibility of syphillitic paresis.'' It appears from a reference to other portions of that report (which report is in the original file in the county clerk's office) that defendant was depressed but his orientation and memory were normal, he had no delusions or hallucinations and his intelligence was probably normal. The judge then referred to the other medical report, which had been made by the physician from the state hospital, and read therefrom the physician's opinion which was as follows: ''That this defendant is insane at the present time. He shows moderate to severe emotional and mental depression

accompanied by agitation. It is further the examiner's opinion that this man was irresponsible and did not fully appreciate the difference between right and wrong, the nature and consequences of his acts at the time of the alleged crimes. He could be classified as a sexual psychopath under the provisions of Section 5500 of the Welfare and Institutions Code as he is afflicted in such a form predisposing to commission of sexual offenses and in a degree constituting him a menace to the health or safety of others due to his mental disease or disorder. He is in need of supervision, care and treatment in a hospital setting. He is certifiable as mentally ill.''

Counsel for the People and for the defendant then presented arguments to the court regarding the weight which should be given to said medical reports. Counsel for defendant stated that the physician from the state hospital is a recognized psychiatrist and that he thought his conclusions should be given great weight, but that if there was ''any doubt in the court's mind, I think that these doctors should be called to testify and perhaps another doctor appointed, but I don't think that their findings should be rejected without further testimony.'' The court then directed counsel for the People to subpoena the physician from the state hospital and continued the trial on the issue of insanity to a later date.

Thereafter, upon the further trial of that issue, the said physician, who is the medical director of the Norwalk State Hospital, was the only witness. He testified in substance, regarding the medical report he had made, as follows: All the facts which he set forth in his report were obtained from the defendant; defendant stated he finished high school and studied engineering one and a half years in a correspondence school; defendant stated that the last job he had was with a plumbing and heating company where he worked as a draftsman, mechanical engineer, and estimator; that defendant's personal history, as shown by the witness' report, does not indicate insanity but it ''goes to show'' that defendant did not make a good adjustment—at an early age he was ''in court'' and in a state school for boys, he then was ''taken'' by an aunt but he ran away, and his military record was not good—''he deserted''; those things show a maladjustment in personal stature but not insanity; there was nothing of significance in the portion of the witness' report relating to diseases and injuries which would indicate insanity; defendant was a ''bit evasive'' about sex history, and the witness was not too well satisfied with defendant's response; the defendant's actions

were influenced by several factors—one factor may have been an absurd sort of rationalization on the part of defendant that, as he told the witness, he had the incestuous relations to keep the daughters from running around with boys; the witness asked the defendant whether he thought the relation was right or·wrong, and the defendant "agreed he should not have done it, but he did not want to lose his daughters"; the witness believed that the defendant, in a mechanical sort of way, knew the relation was wrong; due to the defendant's mental disease the witness thought that the defendant is dangerous in a sex way; and in the opinion of the witness the defendant was insane at the time the witness examined him. He testified further that it would be hard for the witness to say definitely that the defendant had been insane for the past 10 years (the period during which the defendant, according to the testimony of one of the daughters, had committed the offenses against her); defendant's history is that of a rather unstable individual and the witness would say that for the past few years the defendant was abnormal enough to be spoken of as a psychopath individual, even perhaps insane; the defendant also has some symptoms of an organic brain disease, such as memory defect,—that the defendant definitely has some difficulty with his memory. The witness testified further that he was not much in doubt as to defendant's intelligence—he has good intelligence. The judge then asked the witness the following question: "If it were not for this peculiar and abnormal activity, sex activity, would you still say he was insane?" The witness replied as follows: "If I didn't have a chance to talk to him relative to the way he faced the sex situation, and the way he handled it, I doubt—in other words, I mean that the sex feature of this, the nucleus of this whole thing, his sex activity, his abnormal behavior—in that way I doubt that I would have called him insane. I would have said that he was definitely depressed and probably suffering from involution psychosis, but I doubt I would have said he was insane." The court then heard further arguments by counsel, and it found that defendant was sane at the time of the commission of the offenses and at the time of trial.

As above stated, appellant contends that the court erred in not submitting the issue of appellant's insanity "to a special trial" as directed by section 1368 of the Penal Code.

Section 1368 of the Penal Code provides as follows: "If at any time during the pendency of an action and prior to judgment *a doubt arises* as to the sanity of the defendant,

the court must order the question as to his sanity to be determined by a trial by the court without a jury, or with a jury, if a trial by jury is demanded; and, from the time of such order, all proceedings in the criminal prosecution shall be suspended until the question of the sanity of the defendant has been determined, and the trial jury in the criminal prosecution may be discharged, or retained, according to the discretion of the court until the determination of the issue of insanity.'' (Italics added.) The ''doubt'' referred to in that section is a doubt which arises in the mind of the trial judge, rather than in the mind of a third person. (*People* v. *Lindley,* 26 Cal.2d 780, 789 [161 P.2d 227].) ■ In the absence of such doubt the trial judge is not warranted in ordering the special proceeding. (*People* v. *Hettick,* 126 Cal. 425, 428 [58 P. 918].) ■ The judge's determination as to whether such ''doubt'' has arisen will not be disturbed on appeal except under circumstances where a doubt may be said to appear as a matter of law, or where there has been an abuse of the discretion which is vested in the trial judge. (*People* v. *Perry,* 14 Cal.2d 387, 399 [94 P.2d 559, 124 A.L.R. 1123].) It is necessary that a defendant be mentally able to present his defense. ■ There is a difference, however, between the medical view of insanity and the view upon which the statute is founded. (*In re Buchanan,* 129 Cal. 330, 333 [61 P. 1120, 50 L.R.A. 378].) Insanity referred to in said section 1368 is insanity in the sense that defendant is not capable of understanding the nature and object of the proceedings against him and cannot conduct his defense in a rational manner. (See *People* v. *Perry,* 14 Cal.2d 387, 399 [94 P.2d 559, 124 A.L.R. 1123].) In the case just cited, it was said at page 399: If a defendant ''is capable of understanding the nature and object of the proceedings against him and can conduct his defense in a rational manner, he should be deemed sane for the purpose of being tried, though on some other subjects his mind may be deranged or unsound.'' ■ The two physicians were of the opinion, as above shown, that the defendant was insane when the examinations were made. It does not appear, however, that the insanity referred to by them was insanity in the sense (referred to in § 1368) that the defendant was not capable of understanding the proceedings and could not conduct his defense in a rational manner. One physician said that defendant had ''good intelligence,'' and the other physician said that defendant had no delusions or hallucinations and his intelligence was ''probably normal.'' A per-

son might be insane according to many definitions of the word and still be capable of understanding the nature and object of the proceedings against him and be able to conduct his defense in a rational manner. The attorney for the defendant did not assert at any time during the pendency of the action in the trial court that defendant was incapable of such understanding or that he could not conduct his defense properly. It does not appear that a doubt arose in the mind of the trial judge as to the present sanity of the defendant. In view of the statements of the physicians to the effect that defendant was of normal intelligence, and in view of the testimony of defendant at the preliminary examination and all the other evidence, it cannot be said, as a matter of law, that a doubt should have arisen in the mind of the trial judge that defendant was presently insane in the sense that word is used in section 1368 of the Penal Code. The trial court did not abuse its discretion in not suspending proceedings under the provisions of said section 1368.

It seems that appellant is also contending that the evidence is insufficient to support the finding that he was sane at the time the offenses were committed. ■ "[A] person charged with a crime is presumed to be sane until the contrary is established by a preponderance of the evidence." (*People* v. *Chamberlain*, 7 Cal.2d 257, 260 [60 P.2d 299].) Although the physicians were of the opinion that defendant was insane at the time the offenses were committed, the trial judge was not required to accept those conclusions. ■ As stated in *People* v. *Martin*, 87 Cal.App.2d 581, at page 584 [197 P.2d 379] : "The weight to be given to the opinion of an expert depends on the reasons he assigns to support that opinion."

The purported appeal from the sentence is dismissed. (See *People* v. *Tallman*, 27 Cal.2d 209, 215 [163 P.2d 857].)

The judgment and the order denying the motion for a new trial are affirmed.

Shinn, P. J., and Vallée, J., concurred.