[Crim. No. 4705. Second Dist., Div. Three. Dec. 28, 1951.]

THE PEOPLE, Respondent, v. HARRY FIELD, Appellant.

Morris Lavine for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

VALLÉE, J.—Defendant was charged with forging three checks. He pleaded not guilty of the offenses charged and not guilty of the offenses charged ''because he was insane at the time he is alleged to have committed said unlawful acts.'' The court, a jury having been waived, found defendant guilty of the offenses charged, and on abundant evidence found that he was sane at the time they were committed and that he is sane ''at the present time.'' He was sentenced to state prison. He appeals from the judgment and the sentence. As an appeal does not lie from the sentence, that appeal must be dismissed.

At the time the offenses were committed defendant was under commitment to Mendocino State Hospital for the insane (Welf. & Inst. Code, § 6500) and was an escapee therefrom. The record does not reveal the statute under which he had been committed to the state hospital. The order of commitment was in effect at the time of the trial. Defendant contends that by reason of that fact the court was without jurisdiction to try him ''or to adjudge him to punishment· or to punish him.'' He relies on sections 1367 and 1372 of the Penal Code.

The Penal Code uses the words ''insane'' and ''insanity'' in different senses. A defendant may plead that ''he is not guilty of the offense charged because he was insane at the time that he is alleged to have committed the unlawful act.'' (Pen. Code, §§ 1016, 1017.) A person is insane in the sense the word is used in these sections if at the time the overt act was committed he was suffering such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing, or if he did know it, that he did not know he was doing what was wrong. (*People* v. *Wells*, 33 Cal. 2d 330, 349-50 [202 P.2d 53] ; *People* v. *Coleman*, 20 Cal.2d 399, 409 [126 P.2d 349].) Penal Code sections 1026 and 1027 prescribe the procedure to be followed on a plea of not guilty by reason of insanity. If at any time during the pendency of a criminal action and prior to judgment a doubt arises in the mind of the trial judge as to the sanity of the defendant, the court must order the question as to his sanity to be determined. (Pen. Code, § 1368; *People* v. *Darling*, 107 Cal.App.2d 635, 639-640 [237 P.2d 691].) A similar proceeding is pro-

vided if the defendant, as cause against judgment, asserts that he is insane and if "in the opinion of the court, there is reasonable ground for believing him insane." (Pen. Code, § 1201.) ▮▮ A person is insane in the sense used in section 1368 if he is incapable of understanding the nature and object of the proceeding against him and of conducting his defense in a rational manner. (*People* v. *Perry*, 14 Cal.2d 387, 399 [94 P.2d 559, 124 A.L.R. 1123].) We think it is in this sense that the word "insane" is used in section 1367 when it says that "A person cannot be tried, adjudged to punishment, or punished for a public offense, while he is insane." Section 1367 is the first section of chapter VI, title 10, part 2 of the Penal Code. Chapter VI is correctly entitled "Inquiry into the Insanity of the Defendant Before Trial or After Conviction." Section 1368 provides that if prior to judgment a doubt arises as to the sanity of the defendant, the same shall be determined; provides for the trial thereof, and what shall occur with respect to the prosecution. Section 1369 prescribes the procedure at the trial. Section 1370 prescribes what shall be done if the defendant is found sane, and provides that "if the jury finds the defendant insane, the trial or judgment must be suspended until he becomes sane, and the court must order that he be in the meantime committed by the sheriff to a state hospital for the care and treatment of the insane, and that upon his becoming sane he be redelivered to the sheriff." Section 1371 provides that the commitment to a state hospital exonerates his bail. Section 1372, relied on by defendant, reads: "If the defendant is received into the state hospital he must be detained there until he becomes sane. When he becomes sane, the superintendent must certify that fact to the sheriff and district attorney of the county. The sheriff must thereupon, without delay, bring the defendant from the state hospital, and place him in proper custody until he is brought to trial or judgment, as the case may be, or is legally discharged." ▮ The provisions of chapter VI are entirely distinct from the proceedings on a plea of not guilty by reason of insanity. They provide the procedure in case a doubt arises as to the sanity of a defendant during the pendency of a criminal action against him. (*People* v. *Superior Court*, 4 Cal.2d 136, 142 [47 P.2d 724].) "The provisions of the code (Pen. Code, secs. 1016 et seq.), under which this petitioner tendered the issue whether or not he was insane at the time he is alleged to have committed the unlawful act with which he was charged, relate to an entirely different situation than that created by doubt arising

during the pendency of an action relating to the *then* state of mind of the defendant.'' (*In re Singer,* 3 Cal.2d 154, 156 [43 P.2d 1103]; *People* v. *West,* 25 Cal.App. 369, 371, 372 [143 P. 793].) The requirement of section 1372 that the superintendent of the state hospital certify to the sheriff and the district attorney that the defendant has become sane, is for the purpose of bringing him to trial or judgment in the proceeding which was suspended when he was found insane. It does not follow from either section 1367 or 1372 that, in a case such as this in which the record does not disclose the statute or proceeding under which the defendant was committed to the state hospital, the superior court is without jurisdiction to try, adjudge to punishment, or punish an escapee from a state hospital who commits a public offense and is found to have been sane at the time the offense was committed, at the time of trial· and at the time he is adjudged to punishment. The absence of a certificate from the superintendent of the state hospital that the defendant has become sane merely gives rise to the rebuttable presumption that he was insane at the time the offenses were committed and that he is insane at the time of trial.

An order of commitment to a state hospital for the insane does not conclusively establish that the person committed is an insane person. Such a person is presumed to be insane. The insanity is presumed to continue unless the contrary is shown. (*In re Zanetti,* 34 Cal.2d 136, 138 [208 P.2d 657]; *People* v. *Puter,* 85 Cal.App.2d 348, 351 [193 P.2d 23].) The presumption is rebuttable. (*Fetterley* v. *Randall,* 92 Cal.App. 411, 413-15 [268 P. 434].) The insanity which demands that a person shall be confined in a state hospital is not necessarily the same insanity which bars the prosecution of that person for the commission of a felony. (*In re Buchanan,* 129 Cal. 330, 332-4 [61 P. 1120, 50 L.R.A. 378].) In *In re Gibson,* 78 Cal.App. 794 [248 P. 1046], the defendant had been adjudged insane and committed to a state hospital. He escaped and was charged with having committed murder after his escape. The court held that the defendant's alleged insanity was merely a matter of defense to be urged at the trial of the murder charge.

In *People* v. *McConnell,* 80 Cal.App. 789 [252 P. 1068], the offense was committed on March 27, 1925. The defendant was found guilty. The court said, pages 791, 792: ''Upon the trial the defenses relied upon were a denial of any burglary or attempt to commit the same, and insanity. In support of his

defense of insanity there was admitted in evidence a judgment and order of commitment of defendant as an insane person to Stockton State Hospital. There was also admitted in evidence under the objection of defendant a certificate of the medical superintendent of said hospital that defendant was not insane and was discharged on November 3, 1925. Certain medical evidence was also introduced to show that defendant was not insane. . . . Conceding the commitment to have been properly received as evidence of defendant's insanity, it was not therefore, conclusive upon the subject. ▇ In criminal cases a partial insanity, or an insanity with respect to certain subjects, is not incompatible with the possession of mental capacity sufficient to make the party liable to punishment for his acts. ▇ It does not follow, therefore, because one was so committed in the manner indicated, that the commitment is proof that such person was insane to the extent that the law would exempt him from responsibility for his criminal acts. As was said in *People* v. *Willard, supra* [150 Cal. 543 (89 P. 124)] there are many kinds and degrees of insanity, and it is not every kind or degree which will relieve a person from criminal responsibility, and the degree of mental impairment which would authorize his confinement in an asylum for the insane may be entirely different from the degree of mental derangement which will relieve him from responsibility for his criminal acts. One may be insane upon one or several subjects, and for that reason a proper person for confinement in a state asylum to be cared for and treated for his mental disorder, and yet at the same time such person may be perfectly sane upon all other subjects and entirely responsible under the law for a criminal act committed by him." (See, also, *People* v. *West,* 25 Cal.App. 369 [143 P. 793].)

Defendant relies on *People* v. *Phyle,* 28 Cal.2d 671 [171 P.2d 428], *In re Phyle* 30 Cal.2d 838 [186 P.2d 134], and *Phyle* v. *Duffy,* 34 Cal.2d 144 [208 P.2d 668]. *People* v. *Phyle* is not even remotely in point. The only question in that case was whether the trial court had abused its discretion in imposing the death penalty. *In re Phyle* was a proceeding in habeas corpus. Phyle had been sentenced to death. The warden of San Quentin had initiated proceedings to determine his sanity. He had been found insane and committed to a state hospital. Thereafter the superintendent of the state hospital certified to the governor that Phyle was sane and the governor issued a warrant to the warden for his execution. The court stated,

pages 840, 841: "The only question presented is whether a person who has been adjudged insane after conviction, sentence, and delivery to a warden of a state prison for execution, has the right to a judicial determination of the question of his restoration to sanity." The question of Phyle's sanity at the time of the commission of the offense or at the time of his conviction and sentence (the question here) was not involved. If we understand the opinion in *Phyle* v. *Duffy* correctly, that case merely holds that mandamus against the warden is the proper remedy to secure a jury trial in a case in which it is shown that the warden has abused his discretion in not concluding "there is good reason to believe that a defendant, under judgment of death, has become insane," as provided by Penal Code, section 3701. In any event, there is nothing said in that case pertinent to the question in the present case.

The appeal from the sentence is dismissed. The judgment is affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 24, 1952.