[Crim. No. 5250. In Bank. Mar. 11, 1952.]

THE PEOPLE, Respondent, v. JULIO T. APARICIO, Appellant.

James C. Monroe and George H. Chula for Appellant.

Edmund G. Brown, Attorney General, and Frank Richards, Deputy Attorney General, for Respondent.

SHENK, J.—The defendant was charged with the murder of Santana Acosta on April 16, 1951. Since he claimed to be unable to understand English an interpreter was appointed. The defendant pleaded not guilty and not guilty by reason of insanity. He refused to engage an attorney or to have one appointed by the court to represent him. The court directed the public defender to assist him as amicus curiae. He was found guilty of first degree murder without recommendation but the jury was unable to agree as to whether he was sane at the time the crime was committed. A second jury, in proceedings presided over by the same

trial judge, found that he was sane at that time. A motion for a new trial was denied. The appeal is from a judgment imposing the death penalty and from an order denying the motion for a new trial.

The defendant and the deceased, friends of long standing were alone in the defendant's house on the afternoon of the homicide. According to the defendant each had had about five drinks of wine when his companion inquired about "papers" which dealt with the defendant's ownership of certain real property and stated that they were needed by a Mr. Carillo. The defendant then mentioned Mr. Carillo as one engaged in a conspiracy to deprive him of his land and as one who had previously sent spies to the premises and had "used gas" around the house. He testified that after the decedent had made the inquiry about the "papers" the latter swung at him, cutting his hand. The defendant admitted that he then struck the decedent causing him to fall to the floor and that he hit him with a hatchet as he sought to rise. The defendant himself called the police who found the victim still alive but badly beaten and arranged for his transportation to the hospital where he passed away.

When asked at the trial if he had intended to kill the deceased the defendant simply replied, "I only tried to make my defense. What if he had killed me." Although he denied remembering how many times he struck the victim, he admitted that he knew what he was doing each time he hit him.

On appeal the defendant is represented by counsel. They make numerous contentions. The principal one, for the purposes of the appeal, is that the trial court should have ordered a determination of the sanity of the defendant at the time of the trial as provided by Penal Code, section 1368. That section provides: "If at any time during the pendency of an action and prior to judgment a doubt arises as to the sanity of the defendant, the court must order the question as to his sanity to be determined by the court without a jury, or with a jury, if a trial by jury is demanded. . . ."

The sanity contemplated by the code section is tested by appraising the present ability of the defendant to so understand the nature and purpose of the proceedings taken against him as to be able to conduct his own defense in a rational manner. (*People* v. *Perry,* 14 Cal.2d 387, 399 [94 P.2d 559, 124 A.L.R. 1123]; *In re Buchanan,* 129 Cal. 330, 334 [61 P. 1120, 50 L.R.A. 378]; *People* v. *West,* 25 Cal.App. 369 [143 P. 793]; see, also, 3 A.L.R. 94.) A

strong showing is required before an abuse of discretion is deemed to result from the failure of the trial court to order a determination of present sanity. It was said in *People* v. *Lindley,* 26 Cal.2d 780, at 789 [161 P.2d 227]: "The 'doubt' mentioned is one that must arise in the mind of the trial judge, rather than in the mind of counsel for the defendant or in that of any third person (*People* v. *Perry, supra,* 14 Cal.2d 387, 399 [94 P.2d 559, 124 A.L.R. 1123], and cases there cited) and the determination of a motion for a hearing upon the issue of a defendant's sanity at the time of the trial is one which rests within the sound discretion of the court. Necessarily, an appellate court cannot measure to a nicety the basis for the ruling, and the trial judge must be allowed a wide latitude (citing cases) . . ." ▮ Even the testimony of experts as to insanity in a general sense is not sufficient to create a doubt insofar as that testimony does not relate to the defendant's ability to conduct his own defense. (*People* v. *Darling,* 107 Cal.App.2d 635 [237 P.2d 691]; see, also, *People* v. *Huntoon,* 41 Cal.App. 392 [182 P. 776].) ▮ However, when a doubt of the defendant's sanity at the time of the trial as contemplated by the statute appears on the face of the record as a matter of law, an abuse of discretion is shown and the failure to order a determination of the question of sanity results in a miscarriage of justice and a reversal is required. (*People* v. *Vester,* 135 Cal.App. 223 [26 P.2d 685]; *People* v. *West, supra,* 25 Cal.App. 369.)

▮ The failure of the defendant at the time he was trying his own case to plead that he was then insane within the meaning of the section is not controlling. The duty imposed upon the trial judge by the statute is not conditioned on a motion in reliance on the code provision. In *People* v. *Ah Ying,* 42 Cal. 18, this court stated at page 21: "There is no plea of present insanity required. If at any time a doubt arose as to the sanity of the defendant, it was the duty of the Court, of its own motion, to suspend the trial or further proceedings in the case, at whatever stage the doubt arose, until the question of sanity was determined. Common humanity requires that one should not be tried for his life while insane, and counsel for the defendant cannot waive such inquiry when the doubt exists; nor can he, by interposing such a plea, compel the Court to enter upon such inquiry where no ground for such doubt exists." (See, also, *People* v. *Lee Fook,* 85 Cal. 300, 303 [24 P. 654].)

No plea was necessary. (*People* v. *Vester, supra,* 135 Cal. App. 223, 233.)

Defendant's conduct at the time of the trial held on his plea of not guilty is claimed to have indicated a lack of sanity within the meaning of section 1368. At the opening session he announced, "I feel that I want to have this case transferred to the Superior Court in Sacramento because I feel this is a case of the Federal Court because my case is not being heard here, my case is not being fair." He declared that he would not say anything until this transfer was secured. He refused to confer with the public defender. He declared that the prosecution and the court were doing everything possible to punish him in order to "extricate" him from his property. The public defender informed the court that he believed that the defendant was "incompetent." The prosecutor himself suggested that "from a long and personal knowledge of the defendant and his previous difficulties" a plea of not guilty by reason of insanity should be entered for him. This was done with the result on the second trial of that plea as above stated.

 Evidence received during the second trial of the insanity plea is more suggestive of the "doubt" contemplated by section 1368. The testimony of various psychiatrists, one of whom was on the staff of the state mental institution to which the defendant had theretofore been committed several times, dealt principally with the defendant's sanity in the sense of his ability to distinguish right from wrong at the time of the homicide rather than in the sense of his present ability to conduct his own defense. The jury's verdict resolved the question whether the evidence indicated that the defendant was sane so as to be legally responsible for the crime he had committed. But such a determination did not settle the question whether a doubt should have arisen at the time of the trial as to his sanity within the meaning of section 1368. (But see *People* v. *Sloper,* 198 Cal. 238, 251 [244 P. 362].) The psychiatrists testified as to the defendant's mental condition as it appeared to them upon their examinations conducted during the month prior to this trial. One stated that the defendant was suffering from delusions of persecution and hallucinations; another stated that he was "paranoid and delusional"; while a third described him as possibly psychotic from a psychiatric point of view even though he was not legally insane.

Witnesses testified as to previous instances of irrational conduct on the part of the defendant which took the form of expressions of fear of a plot to secure his land and statements that he "heard voices." One witness testified that the defendant had run water into the ground underneath his own house saying that he did so in order to drown spies participating in the plot to secure his land.

The defendant continued to seek a transfer of the case, expressed the belief that he was not getting a fair trial, declared that the proceedings were simply designed to secure his property, addressed garbled questions to the witnesses, and tended to defeat his case by taking the position that he was perfectly sane.

The evidence reveals a continuous course of irrational conduct upon the part of the defendant. His actions during all of the proceedings cast grave doubt on his sanity within the meaning of section 1368. While it is a delicate matter for a court on review to hold that a trial court has abused its discretion in not ordering a determination of sanity as contemplated by the code section, it is concluded that on this record the ends of justice will best be served by a new trial. No other points require discussion.

The judgment and the order denying the motion for a new trial are reversed.

Gibson, C. J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Edmonds, J., concurred in the judgment.