SPENCE, J.—I dissent.
The majority opinion bases the reversal upon the conclusion that the trial court committed prejudicial error in the following respects: (1) In failing to try the question of defendant’s sanity at the commencement of the trial; (2) In permitting defendant to withdraw his plea of not guilty by reason of insanity following the trial on the plea of not guilty; (3) In giving an instruction on the subject of lying in wait; and (4) In failing to give a certain requested instruction relating to circumstantial evidence. In my opinion, a review of the record, including the evidence, shows that defendant was accorded a fair trial, free from any prejudicial error; that defendant was properly convicted of a deliberate and premeditated murder perpetrated by means of lying in wait; and that no ground for reversal has been shown as there has been no “miscarriage of justice.” (Const., art. VI, §4%.)
It may be conceded at the outset that defendant was an unusual type of person, whose history and actions may be said to have evidenced some deviation from the normal. The same may be said, however, concerning a large percentage of persons who commit serious crimes; but this does not indicate that such persons have not the requisite capacity to be subject to trial and conviction for the offenses which they commit. It is only certain types of incapacities, within the broad meaning* of the word “insane,” which deprive a person of sufficient capacity to stand trial upon criminal charges (People v. Perry, 14 Cal.2d 387, 399 [94 P.2d 559, 124 A.L.R. 1123]; People v. Kirby, 15 Cal.App. 264, 268 [114 P. 794]) or which deprive him of sufficient capacity to be held criminally responsible for his acts. (People v. Kimball, 5 Cal.2d 608, 610 [55 P.2d 483].) It is for this reason that mere opinion evidence that a person is “insane” or of “unsound mind,” which often means no more than that there is some deviation from the normal in some respect, has been held in civil cases to be insufficient to show lack of capacity of the individual for a particular purpose. (Estate of Lingen *564 felter, 38 Cal.2d 571, 580 [241 P.2d 990]; Estate of Arnold, 16 Cal.2d 573, 585-587 [107 P.2d 25].) Furthermore, it is well established in criminal cases that if a person “is capable of understanding the nature and object of the proceedings against him and can conduct his defense in a rational manner, he should be deemed sane for the purpose of being tried, though on some other subjects his mind may be deranged or unsound.” (People v. Perry, supra, 14 Cal.2d 387, 399, and authorities cited.) This general subject was discussed at length in In re Buchanan, 129 Cal. 330 [61 P. 1120, 50 L.R.A. 378], and the rule applicable here was recently reiterated by this court in People v. Aparicio, 38 Cal.2d 565, where it was said at page 568 [241 P.2d 221]: “Even the testimony of experts as to insanity in a general sense is not sufficient to create a doubt insofar as that testimony does not relate to the defendant’s ability to conduct his own defense. (People v. Darling, 107 Cal.App.2d 635 [237 P.2d 691]; see also People v. Huntoon, 41 Cal.App. 392 [182 P. 776].)”
In the present case, a reading of the record, including defendant’s testimony and his other statements made during the course of the trial, leaves no doubt that defendant appeared to be an intelligent and rational person, althoug'h perhaps not possessed of the best judgment. In addition, the considered opinions of the three court-appointed experts who examined him during the course of the trial showed that defendant was sane both at the time he committed the offense and at the time of trial. Defendant obviously was keenly aware of the nature of the charge and of the proceedings, and had quite definite ideas concerning the manner in which he wanted the case tried. It appears that from the outset he resisted any suggestion of entering a plea of not guilty by reason of insanity. He was represented by able counsel, who no doubt realized that the evidence would clearly indicate that defendant had killed the victims, and that it might be advisable under the circumstances to interpose the additional plea of not guilty by reason of insanity. In this connection, counsel obtained the affidavit of Dr. Miller and presented it to the court, but without any suggestion that anyone was of the opinion that defendant then lacked the capacity to stand trial upon the charge against him. On the contrary, the affidavit was presented by counsel solely “regarding the plea of not guilty by reason of insanity.” The court thereupon accepted that plea and appointed, as was its duty, three *565 experts to examine defendant with respect thereto. (Pen. Code, § 1027.)
The majority opinion concludes that “the trial court abused its discretion in not trying the issue of defendant’s sanity at the commencement of the trial.” I cannot agree with this conclusion. The trial court had ample opportunity to observe defendant’s previous conduct during the preliminary proceedings leading up to the time of the filing of Dr. Miller’s affidavit on February 7, 1955, the first day of the trial. We cannot assume that such previous conduct manifested any degree of intelligence and rationality less than that manifested by defendant throughout the trial. Neither defendant nor his counsel suggested at any time that defendant lacked the capacity to stand trial; nor did Dr. Miller’s affidavit, containing his bald conclusion that defendant was “insane,” include any statement of opinion that defendant was not “capable of understanding the nature and object of the proceedings against him and [conducting] his defense in a rational manner.” (People v. Perry, supra, 14 Cal.2d 387, 399.) Under these circumstances, it cannot be said as a matter of law that a “doubt” should have arisen in the trial court’s mind concerning defendant’s capacity to stand trial; nor can it be said that the trial court abused its discretion in failing to order a trial of that question. (People v. Jensen, 43 Cal.2d 572, 576 [275 P.2d 25]; People v. Gomez, 41 Cal.2d 150, 158-159 [258 P.2d 825].)
With respect to the withdrawal of the plea of not guilty by reason of insanity, the majority opinion concludes that the trial court abused its discretion “in permitting the defendant, over the implied objection of his counsel, to withdraw his plea of not guilty by reason of insanity.” There was admittedly no express objection of counsel, and I find nothing in the record which may be said to constitute an “implied objection” of counsel. Following the verdict on the plea of not guilty, counsel was still keenly aware of defendant’s objection to the defense of insanity. Counsel was nevertheless placed in a difficult position. The trial court had accepted the plea of not guilty by reason of insanity, and counsel apparently felt under a duty to express his willingness to try the issue thus presented despite counsel’s knowledge of defendant’s manifested intelligence and rationality throughout the proceedings, of defendant’s insistence upon his sanity, and of the unanimous opinions of *566 the court-appointed experts that defendant was sane at all times. All of these facts clearly indicated that defendant would be found sane upon any trial of the issue. Counsel therefore merely stated: “I was going to make this statement, if the Court please, that the defense is prepared to go ahead with this plea of not guilty by reason of insanity. I understand, though, Mr. Merkouris feels differently about it.” Then followed an extended discussion between court and defendant, which included defendant’s repeated insistence that he definitely did not want a trial on the insanity issue and ended with the court’s statement: “Let the record show the plea of not guilty by reason of insanity has been withdrawn.” Counsel did not enter into this discussion or advance any objection thereto or to the final declaration of the court concerning withdrawal of the plea. The record therefore indicates final acquiescence by counsel in, rather than any “implied objection” to, defendant’s withdrawal of the plea of not guilty by reason of insanity. The situation is quite similar to that presented in People v. Perry, supra, 14 Cal.2d 387, where “defendant, in person,” withdrew the plea although his counsel had previously stated, “I am willing to proceed with this insanity plea.” (P. 396.) I am therefore of the opinion that there was neither error nor an abuse of discretion on the part of the trial court in permitting the withdrawal of the plea, and manifestly there was no prejudice.
With respect to the instructions, the majority opinion concludes that the trial court committed prejudicial error in giving any instruction on the subject of lying in wait, as “the evidence is not sufficient to justify the lying in wait instruction.” I cannot join in this conclusion, as I do not believe it can be reconciled with the decisions of this court in People v. Byrd, 42 Cal.2d 200 [266 P.2d 505]; People v. Sutic, 41 Cal.2d 483 [261 P.2d 241]; and People v. Tuthill, 31 Cal.2d 92 [187 P.2d 16].
From the evidence set forth in the majority opinion, the jury could properly infer that defendant had long entertained the deliberate and premeditated intention of killing his victims; that he had obtained guns for that particular purpose; that he had traveled from Detroit to Los Angeles in a Pontiac automobile and registered under an assumed name to conceal his identity; that he had waited in, and watched from, his automobile in the vicinity of his victims’ place of business for long hours during many days pre *567 ceding, as well as on the day of the killing, seeking the opportunity to take his victims by surprise and to accomplish his purpose at a time when his intended victims were together and no other person was present in their place of business; and that he finally accomplished his purpose on September 20, 1954, by means of such lying in wait.
The majority opinion states: “We have here the elements of waiting and watching, but the record is devoid of any evidence tending to show that the defendant made any attempt to conceal himself or to keep his presence in the vicinity of the shop a secret.” In my opinion, there was ample evidence to show that all the necessary elements of lying in wait were present. The “concealment” which is mentioned in connection with lying in wait has never been held to mean complete concealment from everyone. Such complete concealment is ordinarily impossible. All that is required, or should be required, is evidence showing an attempt on the part of the murderer to conceal his presence from his intended victim while watching and waiting for the opportune time to carry out his purpose. Thus, evidence of watching and waiting in an automobile on a public street or road for the purpose of perpetrating murder has been held sufficient to justify the giving of an instruction on lying in wait (People v. Byrd, supra, 42 Cal.2d 200; People v. Sutic, 41 Cal.2d 483 [261 P.2d 241]), and it is immaterial in any case that the intended victim may have become actually aware of the presence of the murderer either immediately before or some time before the killing occurred. (People v. Sutic, supra; People v. Tuthill, supra, 31 Cal.2d 92.) It appears sufficient if the watching and waiting are accompanied by any attempted concealment from the victim as “part of defendant’s plan to take his victim later by surprise.” (People v. Sutic, supra, 41 Cal.2d 483, 492.)
This court has not heretofore adopted the view expressed in the dissenting opinion in People v. Byrd, supra, 42 Cal.2d 200, 217-218, that despite the existence of ample evidence to show watching, waiting and attempted concealment from the intended victim until the opportune time to perpetrate the murder, an instruction on lying in wait is improper if it appears that the victim became “aware of defendant’s presence” prior to the murder and “there is no evidence that the shots were fired from a position of concealment.” (P. 218.) I do not believe that such view should be adopted *568 now, for it would have the effect of declaring improper an instruction on lying in wait in many eases, such as the present one, which I believe are typical cases of murder “perpetrated by means of . . . lying in wait” within the meaning of section 189 of the Penal Code. In other words, if the evidence is otherwise sufficient, I believe that an instruction on lying in wait should be held proper despite the fact that the victim may have ultimately become aware of the presence of the murderer and despite the fact that the murder may have been finally committed in full view of the victim. (People v. Byrd, supra, 42 Cal.2d 200; People v. Tuthill, supra, 31 Cal.2d 92.)
The majority opinion states, however: “In the present case, the killings occurred on the morning of the 20th; the last time defendant had been seen parked in his car in the vicinity was on the 18th; he was not seen watching or waiting on the morning of the 20th, although he was seen driving his car in that vicinity at that time. The facts in the case under consideration do not appear to us to justify a lying in wait instruction.” I cannot follow this reasoning. There was evidence that defendant had been watching and waiting in his parked car near the scene of the murder on the mornings and afternoons of at least eleven separate days in September prior to September 20, the last day being September 18. There was also evidence that defendant was driving his car and later walking in the vicinity on the morning of the murder on September 20. The jury could properly infer that at all such times, including the day of the murder, defendant was attempting to conceal himself from his intended victims in order to take them by surprise, and was watching and waiting for the opportune moment to perpetrate the murder. I find no authority to indicate that one who watches and waits for the opportune moment to commit murder while moving in an automobile or on foot in the vicinity of a particular place may not be held to be “lying in wait” within the meaning of section 189 of the Penal Code, and no good reason appears for so holding. I am therefore of the opinion that there was abundant evidence to justify the giving of the instruction on lying in wait; and that the conclusion of the majority that the evidence was insufficient for that purpose not only finds no support in the authorities cited in the majority opinion but is directly contrary to said authorities.
The reversal by the majority is further predicated upon *569 the failure of the trial court to give a particular instruction on circumstantial evidence, as requested by defendant. In refusing to give the requested instruction, the endorsement of the trial court thereon read in part as follows: 1 ‘ Covered by Caljic 24 and 27 on circumstantial evidence.” In my opinion, the principles involved in the requested instruction were adequately covered by the instructions given, including the instruction that “you are not permitted, on circumstantial evidence alone, to find the defendant guilty of the crime charged against him unless the proved circumstances not only are consistent with the hypothesis that the defendant is guilty of the crime, but are irreconcilable with any other rational conclusion. ” It is conceded by the majority that this “precise principle” was given to the jury here and, in my opinion, there was no error, and certainly no prejudice, in failing to elaborate on the subject of circumstantial evidence further than the trial court did in the instructions given.
For the reasons stated, I would affirm the judgment and the order denying a new trial.
Gibson, C. J., and Shenk, J., concurred.
Respondent’s petition for a rehearing was denied June 20, 1956. Gibson, C. J., Shenk, J., and Spence, J., were of the opinion that the petition should be granted.