[Crim. No. 6364.    In Bank.    Mar. 2, 1959.]

In re BARNEY A. DENNIS, on Habeas Corpus.

Casper & Jensen and William E. Jensen for Petitioner.

Edmund G. Brown and Stanley Mosk, Attorneys General, Clarence A. Linn, Chief Assistant Attorney General, and John S. McInerny, Deputy Attorney General, for Respondent.

CARTER, J.—Barney A. Dennis was convicted and sentenced to state prison in 1954 on two counts of assault with intent to commit murder and four counts of assault with a deadly weapon. A petition for a writ of habeas corpus has been filed on his behalf in this court.[1]

The only contention is that Dennis was tried, convicted and sentenced while insane and that therefore he is illegally confined in San Quentin Prison.

Dennis was charged in an information with the shooting of his wife and five police officers who came to the scene. At the arraignment he entered the single plea of not guilty by reason of insanity.

Section 1367 of the Penal Code provides that "A person cannot be tried, adjudged to punishment, or punished for a public offense, while he is insane." Section 1368 of the same code provides that "If at any time during the pendency of an action and prior to judgment a doubt arises as to the sanity of the defendant, the court must order the question as to his sanity to be determined by a trial by the court without a jury, or with a jury, if a trial by jury is demanded; and, from the time of such order, all proceedings in the criminal prosecution shall be suspended until the question of the sanity of the defendant has been determined, and the trial jury in the criminal prosecution may be discharged, or retained, according to the discretion of the court until the determination of the issue of insanity."

The trial of defendant commenced before the court without a jury[2] on July 8, 1954; the court pronounced him sane at the time of the alleged offenses on July 9, 1954. Judgment and

---

[1]The actual petitioner in this proceeding is William E. Jensen, an attorney. Mr. Jensen will be referred to as the petitioner and Dennis as the defendant. A petition for habeas corpus filed in propria persona by defendant was denied by this court in September, 1955.

[2]Honorable John A. Hewicker was the trial judge.

sentence were pronounced on July 23, 1954. Prior to the commencement of the trial four psychiatric reports were filed with the court, all of which were to the effect that Dennis was insane at the time of the commission of the offenses and at the time of trial. Proceedings were not suspended for a determination of defendant's sanity at the time of trial. Apparently the psychiatric reports were ignored and Dennis was found sane at the time of the crime.

In a report dated June 25, 1954, prepared by Dr. F. L. Crowley, a psychiatrist employed at Patton State Hospital, and filed with the court on July 1, 1954,[3] at the request of Judge Arthur L. Mundo, it was stated in part that "At the present time he [Dennis] shows evidence of schizophrenic reaction, manifested by bizarre thinking, inappropriate laughter, ideas of reference and paranoid trends. At the time of the alleged crime the examiner considers that his judgment was disordered and impaired by his mental illness and he lacked the capacity to fully understand the nature and quality of this act, and was so disordered of mind that he was unable to abide by the right.

"He is not able to cooperate with his attorney in the preparation of his own defense at this time."

In a report dated June 19, 1954, prepared by Dr. Elmer Peterson, a psychiatrist, and filed with the court on June 23, 1954, it was stated, in part, that "I feel that this man [Dennis] is insane; is not able to properly cooperate with his attorney; does not know the difference between right and wrong; and that this condition existed at the time of the assault and probably has existed for a period of many years. I believe that he is in need of hospitalization; that he is potentially extremely dangerous because of his assaultive tendencies and his psychosis.

"DIAGNOSIS: Schizophrenia, paranoid state."

On May 4, 1954, Charles M. Sult, M.D., wrote a letter addressed to the district attorney's office in San Diego County which was later introduced in evidence at the trial. Dr. Sult noted that Dennis had been discharged from the United States Army in 1944 "on the basis of Schizophrenia, paranoid type"; that he had twice been hospitalized therefor in the San Diego County Hospital. He concluded that "In my opinion Barney Allen Dennis is insane in that he does not know right from wrong. It is likewise my opinion that at the time of the shoot-

---

[3]The report shows a stamped filing date of "Jun 1-1954" which is obviously incorrect.

ing in question he also was insane and did not know right from wrong. He is suffering with Schizophrenia, paranoid type.

"*Discussion*: Schizophrenia, paranoid type, is a chronic, incurable disease. It is my opinion that this man should be committed to a State Hospital for the criminally insane for the remainder of his life. Regardless of how well he would appear to recover under any form of treatment, he would be a threat to society."

In a report dated July 2, 1954, and filed with the court on July 3, 1954, Dr. C. E. Lengyel, a psychiatrist, who examined Dennis at the request of the District Attorney of San Diego County, stated that "I saw this man on a previous occasion on July 23, 1948. At that time I described him as being aggressive, arrogant, uncooperative, and belligerent. My diagnosis at that time was dementia praecox, paranoid type. I considered him to be psychotic then, and I do now.

"Diagnosis: Schizophrenic reaction, paranoid type.

"It is my opinion that this man was psychotic at the time of commission of the act, namely shooting several people. I feel that the type of condition that he is suffering from is a chronic type of psychosis; that he presents a hazard to others for he is paranoid, aggressive, and unpredictable. He reacts on impulse, and it is my opinion that this man will probably never recover."

Drs. Crowley, Lengyel and Peterson testified at the trial in accordance with their reports, and Dr. Sult's report was admitted in evidence. The People presented no evidence to the contrary.

■ This court held in *People* v. *Aparicio*, 38 Cal.2d 565, 567 [241 P.2d 221], that "The sanity contemplated by the code section is tested by appraising the present ability of the defendant to so understand the nature and purpose of the proceedings taken against him as to be able to conduct his own defense in a rational manner. (*People* v. *Perry*, 14 Cal.2d 387, 399 [94 P.2d 559, 124 A.L.R. 1123]; *In re Buchanan*, 129 Cal. 330, 334 [61 P. 1120, 50 L.R.A. 378]; *People* v. *West*, 25 Cal.App. 369 [143 P. 793]; see also 3 A.L.R. 94.) ■ A strong showing is required before an abuse of discretion is deemed to result from the failure of the trial court to order a determination of present sanity. It was said in *People* v. *Lindley*, 26 Cal.2d 780, at 789 [161 P.2d 227]: 'The "doubt" mentioned is one that must arise in the mind of the trial judge, rather than in the mind of counsel for the defendant or in that of any third person (*People* v. *Perry, supra,* 14 Cal.

2d 387, 399 [94 P.2d 559, 124 A.L.R. 1123], and cases there cited) and the determination of a motion for a hearing upon the issue of a defendant's sanity at the time of the trial is one which rests within the sound discretion of the court. Necessarily, an appellate court cannot measure to a nicety the basis for the ruling, and the trial judge must be allowed a wide latitude (citing cases) . . .' ▮ Even the testimony of experts as to insanity in a general sense is not sufficient to create a doubt insofar as that testimony does not relate to the defendant's ability to conduct his own defense. (*People* v. *Darling*, 107 Cal.App.2d 635 [237 P.2d 691] ; see also *People* v. *Huntoon*, 41 Cal.App. 392 [182 P. 776].) ▮ However, when a doubt of the defendant's sanity at the time of the trial as contemplated by the statute appears on the face of the record as a matter of law, an abuse of discretion is shown and the failure to order a determination of the question of sanity results in a miscarriage of justice and a reversal is required. (*People* v. *Vester*, 135 Cal.App. 223 [26 P.2d 685] ; *People* v. *West, supra*, 25 Cal.App. 369.) '' (*People* v. *Merkouris*, 46 Cal.2d 540, 553 [297 P.2d 999].)

Bearing the above rule in mind, it appears that all of the reports which were filed prior to trial were to the effect that the defendant was not only insane at the time of the commission of the offenses but was insane at the time of trial, and two of them specifically pointed out that he was unable to cooperate with his attorney in conducting his defense. All of the testimony at the trial was to the same effect as heretofore noted.

The petitioner here alleges upon information and belief that after defendant was imprisoned, the court-appointed attorney who then represented him filed a notice of appeal; that the appeal was thereafter dismissed by the attorney at the request of defendant's mother while the defendant was still insane and imprisoned at the Terminal Island Medical Facility.

It is argued by petitioner that defendant was, in legal effect, deprived of his constitutional right to be present at his trial because his mental condition prevented him from knowing what was occurring and that this lack of mental presence constituted a denial of due process of law. ▮ In *People* v. *Berling*, 115 Cal.App.2d 255, 267, 268 [251 P.2d 1017], the court held that ''Article I, section 13, of the California Constitution gives a defendant the right to appear and defend in person, and section 1043 of the Penal Code provides that 'If the prosecution be for a felony, the defendant *must* be present at the trial.' (Italics added.) The rule is familiar and funda-

mental, 'that the prisoner, in case of a felony, must be present during the *whole* of his trial.' (italic added), quoting from *People* v. *Kohler,* 5 Cal. 72. The same case states: 'In favor of life, the strictest rule which has any sound reason to sustain it, will not be relaxed.'

"The only reasonable interpretation of the above requirement that a defendant be present at every stage of a felony prosecution is that the accused person must be both physically and mentally present. Mere physical presence without mental realization of what was going on would obviously be of no value to the accused. A defendant in such condition would be unable to confer with or assists counsel, unable to testify, and without ability to understand the nature of the accusation or the mechanics or consquences of the trial. An interpretation of the rule as requiring only physical presence would lead to such an absurdity as the purported trial of an imbecile or an insane person without the least understanding of what was taking place in the courtroom. Only in the most unenlightened age could such a so-called trial be countenanced."

The Supreme Court of the United States has held that the states may not take away from a defendant notice of the charge against him and an adequate opportunity to be heard in defense of it. (*Twining* v. *New Jersey,* 211 U.S. 78, 110, 111 [29 S.Ct. 14, 53 L.Ed. 97]; *Powell* v. *Alabama,* 287 U.S. 45, 68, 71 [33 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527]; *Holmes* v. *Conway,* 241 U.S. 624, 632 [36 S.Ct. 681, 60 L.Ed. 1211]; *Snyder* v. *Massachusetts,* 291 U.S. 97, 105 [54 S.Ct. 330, 78 L.Ed. 674, 90 A.L.R. 575].) In *Snyder* v. *Massachusetts,* 291 U.S. 97, 106, 107, 108, the Supreme Court of the United States held: "So far as the Fourteenth Amendment is concerned, the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." The court discussed the matter of the presence of the defendant in various aspects of the proceedings against him as an element of due process. The court stated: "In all the cases thus assumed the presence of the defendant satisfies the test that was put forward a moment ago as basic and decisive. It bears, or may fairly be assumed to bear, a relation, reasonably substantial, to his opportunity to defend. Nowhere in the decisions of this court is there a dictum, and still less a ruling, that the Fourteenth Amendment assures the privilege of presence when presence would be useless, or the benefit but a shadow." In other

words it appears that when the presence of the defendant will be useful, or of benefit to him and his counsel, the lack of his presence becomes a denial of due process of law. In the case at bar, it is obvious from the undisputed and uncontradicted medical testimony that while defendant was physically present his mental condition was such that he was incapable of understanding the proceedings against him and wholly unable to be of any assistance to the counsel representing him. ██ ''A defendant in a criminal case must be present at a trial when evidence is offered, for the opportunity must be his to advise with his counsel. . . . (*Dowdell* v. *United States* [221 U.S. 325 (31 S.Ct. 590, 55 L.Ed. 753)], *supra*; *Commonwealth* v. *Slavski* [245 Mass. 405 (140 N.E. 465, 29 A.L.R. 281)], *supra*.'' (*Snyder* v. *Massachusetts, supra*, 291 U.S. 97, 114.)

In *People* v. *Chamberlain*, 7 Cal.2d 257, 260, 261 [60 P.2d 299], where 10 lay witnesses and one ''reputable physican of long professional practice and experience'' all testified, without contradiction, that the defendant was insane, the court affirmed a judgment entered upon a jury's verdict finding the defendant sane which was predicated upon the presumption of sanity. It was held that ''The personal appearance, mannerisms and actions of the defendant before the jurors during the trial, and the character of his testimony and manner of giving it, were matters properly to be considered by them. We cannot say that the jury, observing the defendant in these particulars during the trial, with the entire evidence adduced at the trial in their minds, aided by the presumption that the defendant was sane, did not have sufficient evidence on which to base the verdict in this case.'' ██ We held in *People* v. *Baker*, 42 Cal.2d 550, 564 [268 P.2d 705], that ''On the trial of the issue raised by the plea of not guilty by reason of insanity, there is a rebuttable presumption that defendant was sane at the time the crime was committed (*People* v. *Myers*, 20 Cal. 518; *People* v. *Loper*, 159 Cal. 6, 11 [112 P. 720, Ann.Cas. 1912B 1193]; *People* v. *Williams*, 184 Cal. 590, 593 [194 P. 1019]; *People* v. *Hickman*, 204 Cal. 470, 477 [268 P. 909, 270 P. 1117]; *People* v. *Leong Fook*, 206 Cal. 64, 67, 70 [273 P. 779]; *People* v. *Chamberlain*, 7 Cal.2d 257, 260 [60 P.2d 299]) and defendant has the burden of proving his insanity by a preponderance of the evidence (*People* v. *Daugherty*, 40 Cal. 2d 876, 901 [256 P.2d 911]). ██ Proof that defendant was afflicted with a permanent insanity, as distinguished from a temporary or transient insanity, prior to the commission of

the crime charged will, however, dispel the presumption of sanity and raise a presumption that his insanity continued to exist until the time of the commission of the crime. (*People* v. *Farrell*, 31 Cal. 576, 581; *People* v. *Francis*, 38 Cal. 183, 188-191; *People* v. *Lane*, 101 Cal. 513, 518-519 [36 P. 16]; *People* v. *Schmitt*, 106 Cal. 48, 53 [39 P. 204]; *People* v. *Findley*, 132 Cal. 301, 307 [64 P. 472]; *People* v. *Keyes*, 178 Cal. 794, 800-801 [175 P. 6]; *State of Oregon* v. *Garver*, 190 Ore. 291, 299-309 [225 P.2d 771] and authorities cited; see 8 Cal.Jur., § 143; 27 A.L.R.2d 121; 1 Wharton's Criminal Evidence, § 212 [11th ed. 1935].)'' ■ It is apparent from the rules set forth in *People* v. *Baker*, *supra*, that the presumption of sanity is a disputable one which may be overcome by a preponderance of the evidence to the contrary. ■ Where, as here, the evidence is uncontradicted and entirely to the effect that the accused is insane, the presumption of sanity may not be permitted to prevail. Any implication to the contrary in *People* v. *Chamberlain, supra,* 7 Cal. 2d 257, heretofore cited and discussed, is hereby disapproved.

■ Since the procedure here was in clear violation of petitioner's constitutional rights, the conviction must be set aside (*In re James*, 38 Cal.2d 302, 313 [240 P.2d 596]). ■ Petitioner is not entitled to his liberty and the trial court should now determine whether he is presently sane (Pen. Code, §§ 1367, 1368) and if so retry the issue of his sanity at the time of the commission of the offenses.

The writ is granted, the return to the order to show cause cause shall stand as the return to the writ, and the defendant is discharged from the custody of the warden at San Quentin and committed to the custody of the sheriff of San Diego County for further proceedings in the superior court of that county.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., Spence, J., and McComb, J., concurred.

Respondent's petition for a rehearing was denied April 1, 1959.